UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:08-CR-31-JMH-HAI-1 |
| | ) | No. 3:15-CV-07407-JMH-HAI |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| MICHAEL D. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On July 6, 2015,[1] Defendant Michael Smith filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. D.E. 920. The United States filed a response in opposition to Defendant's motion on August 24, 2015. D.E. 941. Defendant filed a motion for summary judgment on August 31, 2015 (D.E. 945), and a reply on September 3, 2015 (D.E. 948).[2] Defendant appealed this Court's order denying his various motions for relief under the Rule Governing Section 2255 Proceedings. D.E. 253. On December 22, 2015, the Court of Appeals for the Sixth Circuit dismissed his appeal. D.E. 957. Defendant has also filed various ancillary motions. D.E. 954, 955, 959, 960.

Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), Defendant's § 2255 motion was referred to the undersigned for a recommended disposition. D.E. 920-2. For the reasons that follow, Defendant has failed meet his burden to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255. Therefore, the Court **RECOMMENDS** that his section 2255 motion (D.E.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002). Here, Smith affirmed under penalty of perjury that he placed the motion in the prison mailing system on July 6, 2015.

[2] The Court notes that Defendant filed a second reply on September 23, 2015. D.E 950. It is identical to the first reply (D.E. 948) with additional exhibits attached. The Court has reviewed the exhibits and taken them into consideration in rendering this Recommended Disposition.

920) be **DENIED.**  The Court further **RECOMMENDS** that no Certificate of Appealability be issued.

## I. BACKGROUND

On December 11, 2008, a federal grand jury returned an indictment as to Defendant Michael Smith, Ray Garton, Christopher Smith, Shaun Smith, Mark Irwin, and Joshua Harris, all related to their involvement with Target Oil and Gas Corporation, and the Kentucky and Indiana Oil and Gas Corporation.  D.E. 1.  The indictment charged all defendants with one count of conspiring to commit mail and wire fraud, twenty counts of mail fraud, and two counts of wire fraud.  *Id*.  Defendant and Christopher Smith were each charged with one count of selling securities without registering with the Security and Exchange Commission.  *Id.*  Before trial, Garton and Irwin pled guilty to the conspiracy charge.  D.E. 147, 170.  During trial, Shaun Smith and Harris also plead guilty to all charges against them.  D.E. 271, 273.

Defendant and Christopher Smith's trial lasted for four weeks in 2010.  The Sixth Circuit summarized the facts presented at trial against Defendant and his company as follows:

> Employees of Target Oil interacted with potential investors in three principal ways: (1) the potential investors were first contacted from lead sheets, (2) they were subsequently mailed information packets, and (3) they were then pressured by company "closers" to invest in oil and gas drilling programs.  The fraud that the government accused the Smith brothers of perpetrating occurred in the final two stages.  Information packets that were mailed to the potential investors often misrepresented Target Oil's past successes and exaggerated the likelihood of finding oil and gas.  When Target Oil salesmen followed up on the telephone, they frequently represented some wells as "the greatest thing since sliced bread" and others as virtually certain to produce consistent streams of royalties.  Investors relied on these various representations in deciding to place their money with Target Oil.  When some dissatisfied investors later sought a return of their investment, however, Christopher Smith engaged in stalling tactics, continued to stress the potential for investment returns, or simply would not allow the investors to "pull out."

The image of Target Oil that its salesman communicated was inconsistent with reality. Of the millions of dollars invested in the company, only thousands of dollars were returned as royalties. Wells that Target Oil had represented as sure-fire investments often produced virtually no oil, and numerous wells that had been drilled were never completed. Many investors lost the entirety of their investments, and investor losses totaled in the millions of dollars. In fact, from 2003 to 2008, Target Oil received approximately $15,800,000 investor funds but, according to the postal inspector, distributed only $460,000 in royalties.

Michael and Christopher Smith were at the heart of Target Oil's operations, but they did not act in isolation. Several individuals were employed to assist in the business, with varying degrees of experience and success. Shannon Williams was a young geologist who was hired directly from college and given the responsibility of designing and writing the information packets for Target Oil. Working at the direction of the Smith brothers, Williams often manipulated the images contained in the information packets in a misleading way. The manipulated images frequently exaggerated the likelihood of finding oil or downplayed the presence of dry wells. Eventually, despite limited experience, Williams became a salesman and field geologist for the company.

Geology reports and field recommendations were crucial to Target Oil's operations. The company employed Ray Garton, a licensed geologist, to prepare these documents. Information packets mailed to potential investors included a letter from Garton, which in the beginning recommended particular drilling sites based on field evaluations conducted by him personally. As time went by, however, Garton stopped conducting his own field evaluations and instead relied heavily on representations from Michael Smith, who would state that a particular well was "good" and would supply documents to be used in preparing the geological reports.

Information packets were the bridge between Target Oil's initial contact with potential investors and their being called on the telephone by the company's closers. The closers were experienced salesmen who were tasked with convincing hesitant investors to do business with Target Oil. Mark Irwin started at Target Oil as a regular salesman but eventually became a closer. He testified that all the closers followed a strict regimen. Closers and other salesmen, for example, were not to discuss investment opportunities with women. Reluctant investors were frequently asked if they were risk takers capable of managing and handling their own affairs. Target Oil salesmen often placated dissatisfied investors by offering additional shares in underperforming wells.

The closers were provided with little formal training, and many of them learned by watching and listening to more experienced closers like Christopher Smith. Learning by example, however, was not the only method of instructing new closers. At least one employee was shown the movie *The Boiler Room* as

training material. *The Boiler Room* depicts a fictional New York brokerage firm that used high-pressure sales techniques to commit investment fraud. Another salesman said that Michael Smith made copies of *The Boiler Room* and distributed the movie to various employees.

After Target Oil solicited investors, drilling began. Under general industry practice, the initial drilling for natural gas is typically followed by a process known as completion, which occurs when the drilling area is isolated and hydraulically fractured using service companies to extract the gas. This process, which is commonly known as "fracking," requires an additional investment of time and expense by the drilling company. Target Oil rarely engaged in fracking. Michael Smith preferred to produce gas from wells that did not require this additional expense. On at least one occasion, Michael Smith pledged to frack an underperforming well to increase its production. The fracking was never completed.

As time passed, Michael Smith faced greater difficulties in securing drilling permits and leases. Violations of environmental regulations made obtaining new permits in Target Oil's name problematic. This caused him to obtain permits in Kentucky-Indiana's name, but Target Oil employees continued to handle the investment solicitations for those wells.

D.E. 875 at 3-5. During the trial, District Judge Hood dismissed the securities charges against the Defendants. D.E. 291. Defendants moved for a directed verdict at the end of the trial, and the Court dismissed one of the mail fraud counts. D.E. 305. The jury found Defendant guilty of conspiracy to commit mail fraud and of seven mail fraud counts. D.E. 319. After the verdict, District Judge Hood dismissed the conviction against Defendant on one of the mail fraud counts. D.E. 587.

On July 1, 2011, Defendant was sentenced to 120 months of imprisonment, on each count to be served concurrently, to be followed by thirty-six months of supervised release. D.E. 669. Defendant timely filed an appeal, and he was appointed counsel. Defendant's appeal, which was combined with Christopher Smith's, alleged multiple claims of error. Defendant challenged: (1) the sufficiency of the evidence to convict; (2) a constructive amendment to Count 1 of the indictment; (3) the procedural and substantive reasonableness of the sentences and forfeiture; (4)

the denial of his motion for a new trial; (5) the exclusion of expert testimony; and (6) various
evidentiary rulings. D.E. 875. The Sixth Circuit affirmed Defendant's conviction on April 15,
2014. *Id.* at 37. The Supreme Court of the United States denied Defendant's petition for a writ
of certiorari on October 8, 2014. D.E. 878.

Defendant filed this § 2255 motion on July 6, 2015. D.E. 920. In his motion, Defendant
asserts four Grounds for relief:[3]

1)    Ineffective assistance of counsel. D.E. 920 at 7; D.E. 948 at 2.

2)    "Illegal" criminal forfeiture of his property. D.E. 920 at 8; D.E. 948 at 7.

3)    He was convicted pursuant to an improper indictment. D.E. 920 at 10; D.E. 948
      at 9.

4)    The Government made a false declaration to the grand jury. D.E. 920 at 11;
      D.E. 948 at 11.

The Court will consider each Ground and the specific claims within them in turn.

## II. BACKGROUND

### A. Right to Collateral Attack

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence
violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a
sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To
prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error
had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*,
165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). By
contrast, to obtain habeas relief based on an alleged non-constitutional error, a defendant must

---

[3] The Court notes that many of Defendant's Grounds contain multiple claims, which are then expanded on
considerably in his reply brief (D.E 948).

establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Id*. at 488 (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). As the § 2255 movant, a defendant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

Additionally, the Court recognizes that Defendant is proceeding pro se, or without the assistance of an attorney. Pro se motions receive a comparatively lenient construction by the Court. *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

## 1. Ground One: Ineffective Assistance of Counsel

Defendant's first Ground alleges ineffective assistance of counsel. Defendant alleges he "received inadequate, defective, non-effective, and poor counseling from the district court level[.]" D.E. 920 at 7. According to Defendant, "there are 19-Pre-Trial Jurisdictional motions" that his counsel failed to file. *Id*. He states that defense counsel failed to defend "there [sic] clients in accordance to the State of Kentucky Bar Association." *Id*. He requests "a full-investigation and a return of 75% of the representational fees paid to pre-trial, and trial counselors who did not perform there [sic] job according to the 19-Pre-Trial Motions." *Id*. Defendant's § 2255 motion does not describe with any specificity whatsoever what motions he believes counsel should have filed. Therefore, the United States argues, in its response, that Defendant has failed to meet his burden to establish ineffective assistance of counsel. D.E. 941 at 3.

In his reply, however, Defendant lists "the 18 not 19 motions" that he alleges counsel was ineffective for failing to file. D.E. 948 at 2-4. Among the listed motions are a motion for a bill of particulars, a motion for co-conspirator statements, a motion for the disclosure of the identity of informants, and a "Letter to U.S. Attorney Requesting Discovery." *Id.* at 3-4. Moreover, Defendant accuses the United States of a "False Declaration § 1623" in formulating their response to his § 2255 motion. *Id.* at 5. He states that "[t]he Judge and Court has [sic] been 'taken to the slaughter' by the government 'Fraud upon the Court[.]" *Id.* He then asserts that the "government and other administrative officials" have violated numerous requirements that are imposed upon them in their official capacities. *Id.* at 5-6.

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. However, a defendant is not permitted to second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted).

Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Courts may approach the Strickland analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

Although Defendant lists eighteen motions which he believes his counsel should have filed, he has not provided any factual or legal support to evaluate the validity of the unasserted motions. In order to establish a viable claim of ineffective assistance of counsel based upon counsel's failure to file pretrial motions, a defendant must be able to demonstrate that the basis for the motion is meritorious, and that there is a reasonable probability that the outcome of the trial would have been different. *See generally Kimmelman v. Morrison*, 477 U.S. 365 (1986) (describing this standard in the context of a Fourth Amendment claim). Defendant must establish this by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

Here, Defendant has not provided any factual basis for the Court to evaluate the merits of any motion he alleges should have been filed by counsel or their effect on the outcome of the trial. For example, in one of the most detailed descriptions of a proposed motion, Defendant describes the motion as:

> Defendant's Motion for General Discovery for Trial Preparation and Incorporated Memorandum in Support; Show Cause § Rule-6, 7, and 8; Attached; Counselors were deficient for lack of knowledge of the first 14-Motions Defendant this action did more than prejudiced the defendant he was denied his 5th & 6th Amendments rights to the U.S. Constitution and his 14th Amendment Equal Protection rights under the States of Kentucky including the other states where his small business were operating under; Defendant has met the establish requirements under the law.

D.E. 948 at 4. These are mere conclusory statements, wholly unsupported by any factual allegations. He fails to describe in any detail how his counsel lacked knowledge, how he was prejudiced by any violation of his rights, or what "general discovery" should have been requested by counsel. The Court need not go through each alleged motion, as they are all as deficiently described. Without more, Defendant has not met his burden to establish either deficient performance by counsel or prejudice. Accordingly, his claim with respect to the various motions that counsel allegedly should have filed fails.

Defendant also asserts in his ineffective assistance of counsel section that the United States has committed fraud upon the court in their response to his § 2255 motion, and that its response is a "False Declaration" under § 1623. *Id.* at 5. He asserts that "said judge was under strong medication" and that "the wolves/government" devoured "him with overwhelming [sic] false antics." *Id.* He further states that "ALL operational funding shall cease and desist from all department of government" and that he expects the "government to prove that they did not violate; (1) an error of constitutional magnitude; (2) a sentence imposed ouside [sic] the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceedings

9

invalid." *Id*. Finally, Defendant lists nine prohibited acts that he claims the government violated throughout his case. *Id*. at 5-6.

Again, Defendant's arguments and assertions here are based almost exclusively on legal conclusions with little to no factual support. It appears that Defendant believes the government has misled the Court, and acted inappropriately in its handling of his case. However, he fails to provide any factual support. He repeatedly asserts statements such as the government has overwhelmed the trial court with "false antics," has made a "False Declaration § 1623," and that it has taken the Court "to the slaughter." *Id*. at 5. Yet, Defendant does not provide one example of a false statement that the government has presented. He asserts that the government failed to "disclose exculpatory evidence to the defense," but does not describe what that evidence may have been. *Id*. Further, he alleges that the government attempted to "corruptly influence or color a witness's testimony with intent to encourage untruthful testimony." *Id*. at 6. However, he does not include a single example of a witness's testimony that was allegedly influenced by the United States or provide any reference to any testimony at all.

To the extent Defendant is asserting that the United States is required to prove that there was not an error of constitutional magnitude, a sentence was not imposed outside statutory limits, or that there was not an error as to fact or law, he is confusing the burden allocation in § 2255 proceedings. Defendant bears the burden to support his claim. *See McQueen*, 58 F. App'x at 76 (6th Cir. 2003). Finally, none of these claims are related, as far as the Court can decipher, to any alleged deficiency of counsel. Regardless of whether the claims are appropriately ineffective assistance claims or general claims for relief under § 2255, Defendant has not met his burden. These claims are wholly conclusory, and contain no factual allegations upon which the Court could find that Defendant is entitled to any relief. These claims fail.

**2. Ground Two: Illegal Criminal Forfeiture of his Property**

Defendant's next ground for relief is based upon the seizure and subsequent forfeiture of his property. D.E. 920 at 8. Defendant alleges that the property "was seized by erroneous actions" because the government "must give third parties a chance to assert competing interests in the property[.]" *Id*. According to Defendant, "federal law requires the government to provide notice of the proceedings, giving interested parties thirty days to file a petition asserting their claims." *Id*. Once a petition is filed by a third party, Defendant asserts that "the court must hold an ancillary hearing to determine the bona fides of [the parties'] alleged interest." Defendant alleges that counsel negligently oversaw this process, and the property was lost. *Id*.

The United States responds that Defendant's argument fails for several reasons. D.E. 941 at 3-4. It argues that, to the extent Defendant is asserting the rights of third parties, he has no standing to do so, and that, to the extent that Defendant is challenging the forfeiture of his property, the claim has already been raised and rejected by the Sixth Circuit. *Id*. at 3. Regardless, the United States argues that challenges to forfeitures are not cognizable in a § 2255 motion. *Id*. at 4.

In his reply, Defendant seemingly again argues that the government improperly seized his property, and that counsel was deficient in relation to this alleged improper forfeiture. D.E. 948 at 7. He further states that after paying counsel he was "left with the bare minimum," and he requests that "75% of his Defense Pre-Trial and Trial Counselors representational fees be reimbursed." *Id*. at 7-8. Finally, Defendant again asserts there has been widespread malicious acts by the "government and ALL involved," and he states that the "disbarment" of his appellate counsel was the result of some sort of improper conduct by judges involved in his case. *Id*. at 7-8. Accordingly, Defendant requests proof of the judges' appointments to their posts. *Id*.

11

Again, Defendant provides little factual support and much of his argument is nonsensical. However, as Defendant is proceeding pro se, the Court will construe his arguments liberally. First, the majority of Defendant's claims in this Ground are not the proper subject matter of a § 2255 motion. "Latin for 'you may have the body,' habeas corpus is a mechanism designed to relieve prisoners of unconstitutional confinement." *McGee v. United States*, No. 1:08-CV-499, 2010 WL 310770, *2 (W.D. Mich. January 21, 2010). A § 2255 motion provides "a means of relief for a federal prisoner who seeks release from a sentence of incarceration." *United States v. Mays*, 67 F. App'x 868, 869 (6th Cir. 2003). Therefore, a defendant contesting the imposition of a monetary penalty does not meet the "in custody" requirement of § 2255, even if the defendant is in custody at the time. *Id.*; *see also United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) (monetary fine not a sufficient restraint on liberty); *Rodriguez v. United States*, No. 95-2322, 1997 WL 770636, *1 (1st Cir. Dec. 12, 1997) (challenge to forfeiture on the basis of the Eighth Amendment not cognizable on § 2255 motion). In this Ground, Defendant's claims solely challenge the forfeiture judgment entered against him. As this is not a claim cognizable in a § 2255 motion, this claim fails.

Moreover, even if such a claim were cognizable on a § 2255 motion, Defendant's claims fail. Much of Defendant's allegations in this Ground appear to revolve around an alleged failure by the trial court to conduct an ancillary hearing so that third parties may assert their interests in the forfeited property. D.E. 920 at 8. Defendant has not established how he has standing to assert the claims of these third parties, but assuming arguendo that he does have standing, it is clear from the record that the trial court entertained several motions for ancillary proceedings by interested third parties. *See* D.E. 390, 836, 913. Based on the record, it appears that Defendant is correct that there was no ancillary hearing held, but each requested hearing was either

cancelled or continued based on a settlement between the parties. D.E. 390, 836. Therefore, Defendant's allegations of error are unsupported by the record, even if cognizable.

However, Defendant does, at least implicitly, raise a claim of ineffective assistance of counsel related to the forfeiture. He alleges that "[b]ecause of Pre-Trial and Trial counselors negligence in over seeing [sic] the proper procedures over there [sic] clients [sic] property...all [Defendant] was told that they forgot, and for that response 75% of ALL representational fees should be reimburse [sic] to the [Defendant] and Family." D.E. 920 at 9. Moreover he alleges that "[a]ssuming defense counselors knew what to do, after remitting representational fees for adequate representation, [Defendant] was left with the bare minimum[.]" D.E. 948 at 7.

While claims based on monetary penalties do not satisfy the in-custody requirement of § 2255, a claim of ineffective assistance of counsel related to such penalty may be cognizable. *See Weinberger v. United States*, 268 F.3d 346, 351-52 (6th Cir. 2001) (a defendant may raise a challenge to a restitution order based on ineffective assistance of counsel). However, like his other claims of ineffective assistance of counsel, Defendant has not provided anything more than bare assertions of deficiency without any factual description as to how counsel was deficient. He asserts that defense counsel (he is not specific as to which counsel) was negligent, but does not describe, or even hint at, in what manner counsel was negligent.

Asserting that defense counsel was negligent is a conclusory legal allegation that is not sufficient for the Court to evaluate his claim of ineffective assistance of counsel. On these allegations, the Court cannot determine how any counsel in Defendant's case was allegedly deficient, or what effect this had on the outcome of the proceeding. Accordingly, to the extent Defendant is asserting a claim of ineffective assistance of counsel related to the forfeiture of his property, this claim fails.

Finally, Defendant requests a "'Proof of Claims' on ALL judges involved with his case as to what appointment and consent was authorize [sic] under Title 28 USCS § 451 et. seq. and what jurisdiction does the district court and Sixth Circuit judge have over Admiralty, Bankruptcy, or Maritime cases." D.E. 948 at 7-8 (emphasis omitted). It is clear, from the record, that the District Court had jurisdiction over Defendant's prosecution for violations of 18 U.S.C. §§ 1349, 1341, 1343. Moreover, any allegation that the judges involved in Defendant's case were improperly appointed or somehow inadequately qualified to hear his case is completely unsupported by Defendant's filings or the record. Accordingly, the Court will not entertain these baseless claims. Thus, Ground Two fails.

**3. Ground Three: Improper Indictment**

Defendant's next Ground for relief is based on allegations that the indictment returned against him was improper. D.E. 920 at 10; D.E. 948 at 9. He alleges that the United States did not "get a Indictment [sic] under 18 USCS §§ 1341, 1349 or authorization to seize & forfeiture property under 21 USCS § 853(n), (n)(7); Title 18 USCS §§ 981 is Civil; 982 is Criminal." D.E. 920 at 10. Specifically, he alleges that the "court allow [sic] AUSA Catron, Postal Inspector Roberto Bottoms, and ("OFI") Chad Harlan including others known and unknown to commit 'fraud upon the court' while acting under the color of law and personal official capacity," which "robbed" him and his family of their "Small Business, Personal Property, Life Savings, and rights" under the Kentucky Constitution. *Id*. He then alleges that his son Shaun was pressured into pleading guilty by his trial counsel, and that counsel had lied to his son about the plea process. *Id*.

The United States responds that Defendant's claims are frivolous because the indictment returned against Defendant was proper, and any allegation that he is asserting on behalf of his

14

son Shaun is improper.  D.E. 941 at 4-5.  Defendant replies that the United States "did not and now could not prove a 'crime'" against him under a number of statutes.  D.E. 948 at 9. Defendant then quotes various constitutional amendments, and alleges that the government did not present a "True Bill" to the grand jury.  *Id*. at 9-10.  Finally, Defendant alleges that there was a "run-away grand jury," and that the indictment was "redacted."  *Id*. at 9-11.

First, the Court notes that none of Defendant's claims and allegations in this Ground were raised in his direct appeal.  A federal prisoner's failure to raise a claim on direct appeal, excepting a claim of ineffective assistance of counsel, results in a procedural default of that claim.  *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).  A procedurally defaulted claim may nonetheless be reviewed if the prisoner can show cause to excuse his failure to raise the claim on direct appeal, and actual prejudice resulting from the alleged violation.  *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700.  If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced.  *Bousley*, 523 U.S. at 623.

Ground Three is not an ineffective assistance of counsel claim, with the exception of his attempt to raise such a claim for his son.  Thus, nearly all of these claims could have been raised in a timely direct appeal, and are subject to procedural default.  Defendant does not dispute that he did not raise any of these claims on direct appeal.  D.E. 920 at 11.  Defendant attempts to establish cause by stating that he did not appeal these issues because:

> "I am not a lawyer I just found out from another Pro-se inmate how to research and shepardize cases, I couldn't appeal anything because I paid attorneys to do this who even failed to file for the require BONDS for my seized property and represent me or file for a ancillary hearing; I got all types of help and advice from what is known as a jail house lawyer which is a whole lot better than what I was duped out of from paid counselors/Attorneys…

15

*Id.* Liberally construing Defendant's statement, it appears Defendant is asserting ineffective assistance of counsel as cause for his default. Attorney error can be cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, in order for the error to be cause to excuse a procedural default, it must rise to the level of ineffective assistance of counsel under the *Strickland* standard. *Id.* Thus, Defendant must establish that counsel's failure to raise the claims on direct appeal constituted ineffective assistance of counsel. Appellate counsel is not required to raise meritless arguments on direct appeal. *See Martin v. Mitchell*, 280 F.3d 594, 607 (6th Cir. 2002) (appellate counsel not ineffective for failing to raise an issue that would have failed); *see also, e.g., Upchurch v. Bruce*, 333 F.3d 1158 (10th Cir. 2003), *Bethea v.Artuz*, 126 F.3d 124 (2d Cir. 1997). As analyzed below, none of the issues that Defendant raises or references here appear to have any merit. Accordingly, he cannot establish either that counsel was deficient in failing to raise them on direct appeal or that he suffered any prejudice. Therefore, any claim of ineffective assistance of counsel cannot excuse Defendant's procedural default.

Finally, to extent Defendant is arguing that his lack of legal knowledge is cause to excuse his procedural default, that claim also fails. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's ignorance of the law is not enough to constitute cause to excuse procedural default in § 2254). Thus, Defendant has failed to provide cause to excuse his procedural default of these claims. However, in order to fully complete the record, the Court analyzes the discernable claims in Ground Three below.

Defendant's claims here are completely lacking in factual to support to allow for meaningful review of their merit. Defendant provides no factual basis, in either his motion or reply, to support his claim that the indictment returned against him was improper. Without at least a minimal factual basis, the Court cannot determine why Defendant believes the indictment

was improper. Again, "[a] motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations." *Aguirre v. United States*, No. 2:06-CR-76, 2012 WL 3191958, *6 (E.D. Tenn. Aug. 2, 2012) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962); *Short v. United States*, 504 F.2d 63 (6th Cir. 1974)).

Moreover, the record contradicts Defendant's conclusory assertions. Federal Rule of Criminal Procedure 7 requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Reviewing the indictment in this case, there is no discernable violation of any requirement of an indictment. It is a clear, concise statement of all the charges against Defendant. As part of his motion to expand the record, Defendant attaches a "Response to Target Oil and Gas Corp. Indictments." D.E. 959 at 8. In five pages, Defendant lists multiple factual disputes he has with the indictment, such as the names of people, terms used in his business, and denials of allegations in the indictment. *Id*. at 8-12. Although the Court denies Defendant's motion to expand the record, the undersigned has considered the exhibits attached to it. Liberally construed, these assertions do not entitle Defendant to relief as they are attacks on the factual allegations in the indictment. An indictment need only provide factual allegations constituting the offenses charged. Thus, while the indictment here contained allegations that Defendant disagrees with, he had a full opportunity to contest the facts alleged at trial, and the jury found that the government had provided sufficient evidence to convict Defendant of several charges in the indictment. The Sixth Circuit affirmed. D.E. 875 at 6-12.

Defendant also implies that the forfeiture allegation in the indictment was improper because it was made pursuant to 18 U.S.C. § 981, which he alleges "is Civil; 982 is Criminal…"

D.E. 920 at 10. Therefore, it appears that Defendant is asserting that the indictment was improper because the forfeiture statute that is cited is the civil statute, instead of the criminal version. However, even assuming this very liberal construction of Defendant's argument, he would not be entitled to relief. 28 U.S.C. § 2461(c) provides that "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment[.]" Here, the forfeiture allegation was based upon Defendant's multiple charges of mail fraud. These offenses specifically support forfeiture under both the criminal and civil forfeiture statutes. *See* 18 U.S.C. §§ 981(a)(1)(C), (D)(v) and 982(a)(2). Defendant is not entitled to any habeas relief based upon this argument.

Defendant suggests that the fact that the indictment was redacted could render it improper. It is true that at the outset of the case District Judge Hood granted the United States' motion for leave to file a redacted indictment. D.E. 15. The basis for the motion was to redact "some home addresses of victims within the overt acts and the mail fraud allegations" of the indictment. D.E. 13. However, this was consistent with Federal Rule of Criminal Procedure 49.1, which provides that "in an electronic or paper filing with the court that contains…the home address of an individual, a party or nonparty making the filing may include only:…(5) the city and state of the home address." Accordingly, this redaction was proper as it was consistent with the requirements of the Federal Rules. Moreover, Defendant does not articulate how, even if this was improper, this would entitle him to relief under § 2255.

In his reply, Defendant also lists numerous provisions and statements from various authorities in this Ground. *See* D.E. 948 at 9-11. To the extent this can be construed as claims for relief which are absent from his first § 2255 filing, these claims are deemed waived because

18

they are raised for the first time in Defendant's reply.  *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)). Moreover, none of these statements meet Defendant's burden to establish that he is entitled to § 2255 relief because he has failed to provide any factual support.  Similarly, Defendant wholly fails to provide any factual support for his claim that the Court allowed "AUSA Catron, Postal Inspector Roberto Bottoms, and ("OFI") Chad Harlan including other known and unknown to commit "fraud upon the court[.]"  D.E. 920 at 10.  Defendant does not provide any indication as to how this "fraud" was committed.  Thus, these claims are meritless.

Finally, to the extent that Defendant attempts to raise an ineffective assistance of counsel claim on behalf of his son, he is prohibited from doing so.  Defendant states that his son was pressured and tricked into pleading guilty by his attorney.  "It is a well-established principle that a litigant cannot maintain a federal habeas action to redress a constitutional wrong to others, or to assert the rights of third parties."  Brian R. Means, *Federal Habeas Manual* § 1:85 (2016 ed.) (citing *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976)).  However, it is possible for a third party to assert "next friend" status.  *See* 28 U.S.C. § 2242 (providing that an "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf.").  "As a practical matter, if a litigant is unable to satisfy the requirements for 'next friend' standing…he will also be unable to demonstrate grounds for third-party standing."  Means, *Federal Habeas Manual* at § 1:85.

However, Defendant has failed to meet the requirements to assert such status.  A party seeking "next friend" status must establish two prerequisites.  *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990).  "First, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot

appear on his own behalf to prosecute the action." *Id*. Second, the "next friend" must at least be "truly dedicated to the best interests of the person on whose behalf he seeks to litigate[.]" *Id*. Here, Defendant has not attempted to establish either prerequisite. Thus, he has not established third-party standing or "next friend" status.

Because Defendant did not raise any of these claims on direct appeal, and has failed to show cause for his failure to do so, the claims are procedurally defaulted. Moreover, for the reasons stated above, these claims in this Ground are meritless. Accordingly, this Ground fails.

**4. Ground Four: False Declaration before the Grand Jury**

Defendant's final Ground for relief is based on allegations that the government made a false declaration before the Grand Jury. D.E. 920 at 11. In this ground Defendant alleges that:

> If the courts are created under the above grounds how did the Gov't present a case without proof of admiralty, maritime, or bankruptcy jurisdiction? Also, if the judge created under the above how is they claiming to be criminal when civil is the same thing as criminal? Knowing that the indictment was not acquire [sic] as require [sic] by the rules and laws of the court, did the government make a false declaration before the court and grand jury? Knowing the above is true, how much did it cost the government to destroy my business, reputation, property, family, and life savings??? A hearing is requested to prove the GROUNDS: raise herein, and all other relief this court deems just and proper.

D.E. 920 at 11. The United States responds that Defendant's conviction was pursuant to laws of the United States, and therefore was within the jurisdiction of the United States. D.E. 941 at 5.

In his reply, Defendant again cites a multitude of scattered statutes and asserts that the United States did not respond to any of his Grounds for relief. D.E. 948 at 12-13. Further, he cites several cases he alleges support his allegations of perjury before the grand jury. *Id*. at 13-14. He states that there are multitudes of cases that prove "that the government went above and beyond its duty to violate the due process and confrontation clause of the Sixth Amendment." *Id*. at 14.

20

Again, Defendant did not raise any of these claims on appeal, and they are procedurally defaulted.   In explaining his failure to raise this on appeal, Defendant states "I am not an attorney" and reiterates that his criticisms of his defense counsel requesting that 75% of his representational fees be returned to him.   D.E. 920 at 13.   As discussed above, ineffective assistance of counsel can serve as cause to excuse a defendant's procedural default if it meets the *Strickland* standard for ineffective assistance.   Here, Defendant has not provided any factual evidence, beyond his bare allegations, to support his claim of ineffective assistance.   Thus, Defendant has not established cause, and these claims are procedurally defaulted.

However, the Court will evaluate his claims to complete the record.   Liberally construing this Ground in his motion, Defendant attempts to rely on *Adams v. United States*, 319 U.S. 312 (1943), to support his assertion that the court did not have jurisdiction to entertain his case. However, Defendant's reliance on *Adams* is misplaced as *Adams* dealt with a very narrow issue of the jurisdiction for the trial of three soldiers who committed rape in a military camp.   An act of Congress required that the government give notice of acceptance of jurisdiction over the land acquired.   *Id*.   The *Adams* court determined that since the government had not complied with the act, the district court was unable to adjudicate the crimes.   *Id*.

Here, Defendant's case does not involve any military property or property over which the United States was required to formally accept jurisdiction, thus *Adams* does not apply.   "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."   18 U.S.C. § 3231.   "Federal courts have exclusive jurisdiction over offenses against the laws of the United States ...the permission of the states is not a prerequisite to exercise of that jurisdiction."   *United States v. Blevins*, 999

F.2d 540 (table) (6th Cir. 1993) (quoting *United States v. Sitton*, 968 F.2d 947, 953 (9th Cir. 1992)).  Accordingly, any argument Defendant attempts to assert on this point is meritless.

This Ground also reattempts to raise his claim that the indictment was improper. However, he again fails to provide any allegation as to how the government allegedly secured an improper indictment.

Defendant also repeatedly makes reference to a fraudulent declaration made "before the court and the grand jury[.]"  D.E. 920 at 11.  While his motion does not contain any factual support for this allegation, he details the claim more in his reply.  In his reply, Defendant extensively relies on *Sanders v. Sullivan*, 863 F.2d 218 (2d Cir. 1988) to support his claim of a false declaration.  Defendant requests that the Court "apply the same analogy that the Second Circuit applied in Sanders, i.e. The Second Circuit focused on the materiality of the <u>false</u> evidence in contributing to the conviction[.]"  D.E. 948 at 14 (emphasis in original).  According to Defendant, the false evidence in his case was "the Postal Inspector alleging that only a small amount of royalties was paid to investors instead of the trier of fact $1,000,000.00 plus."  *Id*. Accordingly, Defendant states that this was a due process violation of "extraordinary nature." *Id*.

However, Defendant's reliance on *Sanders* is misplaced.  *Sanders* involved a manslaughter conviction predicated upon the testimony of two principal witnesses, a common-law married couple.  *Sanders*, 863 F.2d at 219.  After his wife died, the husband recanted his testimony and implicated his now deceased wife.  *Id*.  The husband then signed five typewritten affidavits indicating that he had given false testimony at Sanders's trial.  *Id*. at 220.  Ultimately, in relevant part, the Second Circuit found that Due Process was violated when, after a credible

22

recantation of material testimony, the court is left with a "firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *Id*. at 226.

Here, Defendant has not presented any credible allegations about any perjured testimony, or any other form of evidence that would lead the Court to believe that a Due Process violation has occurred. The only allegation of perjury contained in Defendant's motion or reply is that "the Postal Inspector alleging that only a small amount of royalties was paid to investors instead of the trier of fact $1,000,000.00 plus." D.E. 948 at 14. Defendant states this "must leave the court with a firm belief that, but for the perjured testimony, the defendant would most likely not have been convicted and there was more than one according to court records." *Id*. He provides no basis for this allegation, or any reliable indications as to its credibility. Accordingly, he has failed to meet his burden as he has presented nothing credible to believe that perjured testimony was presented.

Defendant's claims in Ground Four were not raised on direct appeal, and thus are procedurally defaulted. However, even if not procedurally defaulted, liberally construed the claims fail as he has not met his burden to establish he is entitled to relief. Accordingly, this Ground fails.

## 5. Ancillary Motions

Throughout the pendency of his § 2255 motion, Defendant has filed a multitude of motions, many of which are currently pending. Each will be addressed in turn to the extent the Court can interpret the relief requested by each. First, Defendant has filed a motion for summary judgment on his § 2255 motion. D.E. 945. Defendant requests that the District Court grant his immediate release, that he be awarded $360 million, and any other relief the Court deems proper. *Id*. at 1-2. He also raises questions about the redaction of the indictment, and asserts that his

family is being harassed by the U.S. Postal Inspector and others. *Id*. For the reasons stated above, Defendant has failed to meet his burden to prove he is entitled to relief under § 2255, and accordingly, he is not entitled to summary judgment on his motion.

Second, Defendant also filed a motion requesting "A Copy Of The Court Docket Sheet § 2255 Reflecting The Demands Requested On The Civil Cover Sheet And All Other Relief Demanded And Requested Under § 2255 Rules-6, 7, & 8." D.E. 949. Defendant also specifically requests "a copy of the #510 docket sheet showing the demands requested on the civil cover sheet $360-million." *Id*. Docket Entry 510 is not a civil cover sheet showing demands, but an order from District Judge Hood denying Defendant and Chris Smith's motion for *Brady* and *Giglio* evidence. However, the Court will direct the Clerk to mail a copy of the order and the docket sheet to Defendant.

Defendant's third motion requests "the court to stop and defer all payments for any fines and assessement [sic] fees and restitution until a hearing can be held on pending § 510/ § 2255 motion[.]" D.E. 955. Defendant also filed a separate identical motion. D.E. 954. The motion states that all the payments on fines, fees, and restitution be stopped because "the charges, sentence, and conviction cannot rest on a final Judgment and Commitment Order" because "Francis Catron, Roberto Bottoms, Chad Harlan, and any other persons acting along or in capacity with one another…was [sic] acting in violation of 28 USCS § 530B et. seq." D.E. 955.

Section 530B sets out the ethical standards for attorneys for the United States government. 28 U.S.C. § 530B. None of the agents listed, to the Court's knowledge, are attorneys for the United States. Moreover, Defendant does not establish how they violated that statute with any factual support. Presumably, Defendant is attempting to move the Court to

"stop and defer" the financial portion of his sentence until his § 2255 motion is ruled upon. As analyzed above, Defendant's § 2255 motion is meritless, thus his motion here should be denied.

Defendant has also filed a motion pursuant to Rule 7 of the Rules Governing Section 2255 Cases to expand the record. D.E. 959. Defendant includes with this motion a statement that law enforcement "stole" his father's all-terrain vehicle. *Id*. In support of this statement he includes some pictures, and directs the court to an online video and to call a telephone number. *Id*. The motion also asserts that the magistrate judge does not have final authority to enter a final disposition in his case. *Id*. at 4. Defendant also submitted, along with the motion, a few flow charts of his business, a list of factual allegations regarding the indictment, and a copy of Christopher Smith's appellate brief before the Sixth Circuit. *Id*. at 6-90.

Rule 7 of the Rules Governing Section 2255 Proceedings states that "[i]f the motion is not dismissed, the judge **may** direct the parties to expand the record by submitting additional materials relating to the motion." Rule 7(a) (emphasis added). Here, Defendant's § 2255 motion is meritless, and there is no need to expand the record with the materials included in Defendant's motion. Defendant's allegations regarding the indictment do not support his claim that the indictment is improper. Moreover, Defendant's motion complains of actions by law enforcement against the property of a third party. As analyzed in greater detail above, Defendant is unable to assert the rights of third parties in his § 2255 motion.

Further, Defendant's assertion that a magistrate judge does not have the authority to finally dispose of his claim misconstrues the procedural posture. Rule 10 of the Rules Governing Section 2255 Proceedings states that "[a] magistrate judge may perform the duties of a district judge under these rules, as authorized by 28 U.S.C. § 636." The undersigned is not issuing a final disposition in Defendant's case, but is instead issuing a recommended disposition pursuant

to 28 U.S.C. § 636(b)(1)(B).  Defendant has a right to object to the undersigned's recommended disposition of his motion as detailed below.  For all of these reasons, Defendant's motion to expand the record should be denied.

Finally, Defendant filed a "request for a writ of mandamus for immediate release and demands."  D.E. 960.  Defendant requests that a writ of habeas corpus issue for his immediate release based on "Newly Discovered Evidence (No True Bill Indictment was ever issue [sic])" and cites the Kentucky extradition statutes and *Adams v. United States*, 319 U.S. 312 (1943). Defendant's motion should be denied because he is not entitled to relief under § 2255. Moreover, Defendant does not explain how the Kentucky state extradition statutes (KRS § 440.150 to 440.420) apply in this matter.  Accordingly, Defendant's motion should be denied.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).  For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and

that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court has considered the issuance of a Certificate of Appealability as to each and every claim presented by Defendant. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue. Moreover, many of Defendant's claims are procedurally barred, but no jurist of reason would find that the question of whether the motion states a valid claim of the denial of a constitutional right is debatable. Nor would any jurist of reason find the correctness of the procedural rulings above to be debatable.

## IV. RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motions for 28 U.S.C. § 2255 relief (D.E. 920), his motion for summary judgment (D.E. 945), and his motion for a writ of mandamus (D.E. 960). The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court **FURTHER ORDERS** that Defendant's motions (D.E. 954, 955, 959) are **DENIED**. Defendant's motion for a copy of the docket sheet and Docket Entry 510 (D.E. 949) is **GRANTED**. The Clerk is **DIRECTED** to mail a copy of the Docket Sheet and Docket Entry 510 to Defendant.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make

a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 22nd day of June, 2016.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge