UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at FRANKFORT**


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No. |
| | ) | 08-cr-00031-JMH-HAI-1 |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 15-cv-07307-JMH-HAI |
| | ) | |
| MICHAEL D. SMITH, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |


** ** ** ** **

This matter is before the Court on the Recommended Disposition entered by Magistrate Judge Hanly A. Ingram [DE 962]. Said action was referred to the magistrate for the purpose of reviewing the merit of Defendant's Motion to Vacate, Set Aside, or Correct His Sentence pursuant to 28 U.S.C. § 2255 [DE 920], as well as a host of other motions filed by Defendant Smith, including his Motion for Summary Judgment on his § 2255 Motion [DE 945] and his Motion for Writ of Mandamus for Immediate Release and Demands [DE 960], which seeks relief on the same grounds as his § 2255 Motion. In his Report and Recommendation, the Magistrate Judge recommends that the Court dismiss Smith's motions. Defendant has filed Objections [DE 963] to that Recommendation and this matter is ripe for consideration. For the reasons stated below, the Motions will

1

be denied.  Judgment will issue by separate order.

## I.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation.  *See* Fed. R. Civ. P. 72(b)(2).  If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Objections must be stated with specificity.  *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). Generally, "a judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge." 28 U.S.C. § 636.  However, when the petitioner fails to file any objections to the Recommended Disposition, as in the case *sub judice*, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  "Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Carson v. Hudson*, 421 F. App'x 560, 563 (6th Cir. 2011) (quoting *Souter v. Jones*, 395 F.3d 577, 585–86 (6th Cir. 2005)).

As an initial matter, Defendant Smith has stated no cogent objection to the factual and procedural summary drawn from the record as set forth by the Magistrate Judge in the Recommended Disposition.[1] [*See* DE 962 at 2-5, Page ID#: 13362-13365.] Accordingly, the Court accepts and adopts it as its own and incorporates it here by reference.

Nor has he objected to the Magistrate Judge's statement of the law applicable to petitions for writs of habeas corpus under 28 U.S.C. § 2255, and the Court accepts and adopts it, reproducing here for the purposes of its analysis:

> Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht*

---

[1] Defendant Smith attempts to contest a number of facts or the interpretation afforded to those facts that he does not contest, but he has offered nothing more than conclusory alternative statements of the facts relevant to the case as it was tried below. To extent that he wishes to rely on statements attached as exhibits to his Objections, that is too little too late and the Court need not consider those late-filed materials, particularly as they offer nothing which would be reasonably expected to change the outcome of this proceeding had they been included with the original Motion under § 2255. Accordingly, for the purposes of this Memorandum Opinion and Order, the Court accepts and adopts the Background offered by the Magistrate Judge and gleaned in part from the opinion of the United States Court of Appeals for the Sixth Circuit [DE 975] on this matter as an accurate summation of the proceedings and the facts at bar.

> *v. Abrahamson*, 507 U.S. 619, 637 (1993)). By
> contrast, to obtain habeas relief based on an
> alleged non-constitutional error, a defendant
> must establish a "fundamental defect which
> inherently results in a complete miscarriage
> of justice or an error so egregious that it
> amounts to a violation of due process." *Id*. at
> 488 (citing *Hill v. United States*, 368 U.S.
> 424, 428 (1962)). As the § 2255 movant, a
> defendant bears the burden of proving his or
> her allegations by a preponderance of the
> evidence. *McQueen v. United States*, 58 F.
> App'x 73, 76 (6th Cir. 2003) (per curiam)
> ("Defendants seeking to set aside their
> sentences pursuant to 28 U.S.C. § 2255 have
> the burden of sustaining their contentions by
> a preponderance of the evidence.").

[DE 962 at 5-6, Page ID# 13365-13365.] Nonetheless, as did the Magistrate Judge, the Court "recognizes that Defendant is proceeding pro se, or without the assistance of an attorney...[,]" and affords his pleadings a comparatively lenient construction. [*Id*. at 6, Page ID# 13366 (citing *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)).]

### III.

The Court first addresses Smith's objection to the Magistrate Judge's Recommended Disposition with respect to his claim that ineffective assistance of counsel deprived him of counsel in violation of the Sixth Amendment to the United States Constitution. Specifically, he complains that his counsel failed to file some 18 "Pre-Trial Jurisdictional motions," including a motion for a bill

4

of particulars, a motion for co-conspirator statements, a motion for the disclosure of the identity of informants, and a "Letter to the U.S. Attorney Requesting Discovery." He contends that his counsel failed to defend him "in accordance to the State of Kentucky Bar Association" and he seeks an investigation into counsel's performance, demanding a return of a portion of the fees paid to counsel in the pre-trial period.[2]

Smith does not, however, object to the Magistrate Judge's summation of the relevant law with respect to his ineffective assistance of counsel claims, which the Court accepts and adopts:

> To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

---

[2] He has complained, as well, that the United States has, in its Response to his Motion to his motion among other places, worked a "Fraud upon the Court" and complains that "government and other administrative officials" have violated requirements imposed upon them in their official capacities. The Court can afford Smith no relief on these grounds. The phrase "fraud upon the court" is not a term of art which suggests a given set of inappropriate behaviors and, no matter how many times it is repeated, it provides no basis alone for relief. The United States has filed materials that address his arguments and which rely on the record in this matter. Simply responding is not "fraud" without more. Nor has fraud upon the Court or anyone occurred simply because Defendant Smith disagrees with both the basis and the logic set forth in the United States' presentation of the case against him or its objections to his many requests for relief.

A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. However, a defendant is not permitted to second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Courts may approach the Strickland analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

> . . . In order to establish a viable claim of
> ineffective assistance of counsel based upon
> counsel's failure to file pretrial motions, a
> defendant must be able to demonstrate that the
> basis for the motion is meritorious, and that
> there is a reasonable probability that the
> outcome of the trial would have been
> different. *See generally Kimmelman v.
> Morrison*, 477 U.S. 365 (1986) (describing this
> standard in the context of a Fourth Amendment
> claim). Defendant must establish this by a
> preponderance of the evidence. *Pough v. United
> States*, 442 F.3d 959, 964 (6th Cir. 2006);
> *McQueen v. United States*, 58 F. App'x 73, 76
> (6th Cir. 2003) (per curiam) ("Defendants
> seeking to set aside their sentences pursuant
> to 28 U.S.C. § 2255 have the burden of
> sustaining their contentions by a
> preponderance of the evidence.").

[DE 962 at 7-8, Page ID#: 13367-13368.] Further, appellate counsel

is not required to raise meritless arguments on direct appeal. *See

Martin v. Mitchell*, 280 F.3d 594, 607 (6th Cir. 2002) (appellate

counsel not ineffective for failing to raise an issue that would

have failed); *see also, e.g., Upchurch v. Bruce*, 333 F.3d 1158

(10th Cir. 2003), *Bethea v. Artuz*, 126 F.3d 124 (2d Cir. 1997).

Smith has provided no factual or legal support upon which the

Court might evaluate the validity of the motions which he claims

that counsel should have asserted—not even a precarious foundation

upon which the Court could begin to determine whether there was a

reasonable probability that the outcome of his trial would have

been different had additional motions been filed. Without

meritorious motions or effective actions that might have been

taken, he cannot establish that counsel was ineffective for failing to raise the issue or take the action or that he suffered any prejudice. There can be no relief based on a theory of ineffective assistance of counsel. Therefore, any claim of ineffective assistance of counsel cannot excuse Defendant's procedural default. Nor does Defendant's own ignorance of the law excuse a procedural default. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's ignorance of the law is not enough to constitute cause to excuse procedural default in habeas corpus petition under 28 U.S.C. § 2254).

For example, the Court cannot imagine how a request for additional discovery might have changed the outcome in this case. Counsel for this defendant filed a Request for Discovery under Rule 16(a) [DE 56] very early in this matter. Further, the undersigned recalls that defense counsel and the United States referenced discovery and a substantial opportunity to review of an extraordinary amount of documents and other evidence in this matter on several occasions during the pretrial period. Notably, counsel for Defendant Smith was present at a hearing on co-defendants' motions to continue trial, heard on February 23, 2009 [DE 86], at which the Court heard from counsel for co-defendant Ray Garton:

> I have been at the post office numerous times
> already. It's going to take several months,
> just to be candid with you. I put that -- I

8

put that in my motion, just some idea of how much is there. There is 50 or 60 boxes, bankers boxes filled with documents plus 50 some accordion files of documents that the government seeks to introduce in its case in chief; and then just drawers of miscellaneous documents in addition to what I have already described.

[DE 862 at 6-7, Page ID#: 12467-12468.] At the same hearing, counsel for the United States described the availability of the evidence to defense counsel without objection from Smith's attorney, as follows:

What we have done is set up a warehouse out in the -- in some postal service space, and it is pretty much organized by exhibits. And we have let counsel know what the government intends to use basically in its case in chief. And then we have also pointed out that here are these other boxes that we don't think are particularly significant, but please feel free to rummage through everything.

We have made both of the case agents available.

We do acknowledge that counsel needs additional time, that there are -- it is basically a room approximately the size of this courtroom that's got documents laid out both in the exhibit format and then also in these additional boxes. So they do need some additional time, Your Honor.

[*Id.* at 7, Page ID#: 12468.] In the absence of some proof that additional discovery could have been forthcoming, there is no relief to be had.

Smith complains that his attorney was ineffective when he failed to file a motion for prosecutorial misconduct or to suppress evidence obtained as a result of a search warrant executed in 2007 at the home where his father, Vernon Smith, lived. The Court recalls that both currency and cashier's checks were seized as a result of that search. Smith theorizes that Postal Inspector Roberta Bottoms lied in order to obtain that search warrant when she represented that she had searched the Garrard County Court records and learned that Michael Smith owned two houses to be searched which were, he avers, actually owned by Smith's mother and father. There is no demonstration of prejudice, however, because he does not specify how a different result would have been reached by the jury had that evidence been suppressed or that a motion to dismiss the indictment would have been meritorious.

Nor does he make a case for relief on the grounds that his attorney was ineffective for failing to seek a Bill of Particulars under Fed. R. Crim. P. 7 because the government failed to specify how he committed mail and wire fraud in the indictment in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. He has not outlined surprise or a lack of information which impeded his defense of the matter. *See United States v. Salisbury*, 983 F.2d 1369, 1375 (citing *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976); *United States v.*

*Haskins*, 345 F.2d 111, 114 (6th Cir. 1965)) ("A bill of particulars is mean to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes."), Notably, he has not argued that his counsel was ineffective for joining [DE 106, Page ID# 290] in a co-defendant's Motion to Strike the "background" section of the Indictment as surplusage [DE 89], which the Court denied [DE 111]. Smith would have it both ways – that the indictment was too much or the indictment was too little – but the Court was not persuaded of the former in 2009 and it is not persuaded of the latter as presented in this collateral attack in 2017. Unable to demonstrate that such a motion would have been meritorious and, thus, impacted the outcome of the trial in any way, this argument for relief fails, as well.

Smith suggests that his counsel lacked knowledge and prejudiced his rights under the Constitution by failing to file some form of a motion because his "small business" [DE 948 at 4] somehow met the established requirements under the laws of Kentucky and other states where it operated. The Court is unclear what motion might have been made in this respect. It is not only insufficient to even commence an inquiry for the purposes of his claim that he was prejudiced by ineffective assistance of counsel, it is nonsensical.

Neither has he established that a motion for disclosure of a grand jury matter under Fed. R. Cr. P. 6(e)(3)(E)(ii) would have been meritorious and, thus, had a chance of yielding a reasonable probability that the outcome of the trial would have been different. At the end of the day, he argues that someone had to be lying to the grand jury to obtain an indictment, but ultimately his arguments and conclusory allegations reveal nothing more than his disagreement with and disappointment in the evidence presented at trial and the jury's perception of the evidence which resulted in a verdict on that very indictment with which he also disagrees. To the extent that he is concerned about evidence that might have been presented to the grand jury concerning the bona fides of investors, his licensing to participate in certain investment or drilling schemes, legitimate investments in which Target Oil and Gas might also have been involved in addition to the acts for which the co-defendants were charged and convicted, truths which might have been mingled with misrepresentations by the various co-conspirators, and other factual minutae, the Court is unpersuaded that its disclosure to the grand jury (or, for that matter, at trial) would have been meaningful.

The net result is the same. The Court dismissed certain charges for securities fraud and other matters during the course of the proceedings in this matter and the jury convicted and

acquitted on other counts based on the evidence presented during the jury trial. The jury considered the evidence in detail, returning a nuanced and, by all appearances, carefully considered verdict. No doubt, Target Oil and Gas was successful in some of its ventures, a fact that was brought to the jury's attention on several occasions by both the prosecution and counsel for the various co-defendants. The prosecution and, ultimately, the jury were concerned, however, with the situations where Target Oil and Gas was not successful and sought to determine whether fraud was involved in those instances. The other acts and implications on which testimony might have been offered, through what might have been the testimony of Jack Wheat or Doug Hamilton, for example, were not necessarily exculpatory with respect to the instances of fraud nor is there a reasonable probability that they would have changed the calculus in this matter and, thus, the outcome of the trial.

As the Magistrate Judge points out, none of the motions which Smith argues were somehow necessary to his case fare any better.[3]

---

[3] In at least one instance he insists that he was prejudiced when his counsel failed to object to the introduction to the introduction of cease and desist orders from other states. In fact, his counsel did make that objection, in a Motion in Limine to Exclude Evidence of Cease and Desist/Prohibition Orders [DE 212].

He is also confused in his argument that there should have been some form of motion filed or objection made with reference to evidence concerning the placement of a "black dot" on a map as evidence of fraud. The Court concludes that he must be referring to the use of mapping technology by Ray Garton to determine and indicate that hydrocarbons were present in a given area in Texas.

Notwithstanding the many pages Smith spends describing things that his attorney might have done and theories that his attorney might have chased to explain the acts and omissions of Smith and his conconspirators, he has not even begun to demonstrate by a preponderance of the evidence that there was a "reasonable probability that. . .the result of the proceeding would have been different" had his counsel filed additional motions in the pretrial period or at trial.    Many are nonsensical, but in no instance would relief be warranted.  Reviewing the matter de novo, the Court agrees with the Magistrate Judge that "Defendant provides no factual basis, in either his motion or reply, to support his claim that the indictment returned against him was improper" or for that matter to support his claim that some 18 pre-trial motions should have been filed by his counsel and declines to provide him with relief because "[a] motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations." [DE 962 at 16-17, Page ID##: 13376-13377 (quoting *Aguirre v. United*

---

The Court recalls that there was testimony that the color on the maps had been enhanced by someone at Target Oil and Gas to indicate a great likelihood of finding hydrocarbons under the surface than the testing had indicated.  All of this makes no difference because the Court recalls that evidence revealed that the well in question was never drilled there anyway.  It was drilled in Kentucky, a substantial distance away from Texas, the promised location in the well, without disclosure to investors.

*States*, No. 2:06-CR-76, 2012 WL 3191958, *6 (E.D. Tenn. Aug. 2, 2012)).]

Defendant has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," and his procedural default is not excused. There is no relief is available to him on the theory that he was provided ineffective assistance of counsel. *See Strickland*, 466 U.S. at 694.

**IV.**

The Court has considered, as well, Smith's claim for relief from the seizure and subsequent forfeiture of property [DE 920 at 8.] He argues that the property was forfeited in error because the government "must give third parties a chance to assert competing interests in the property." This argument is not subject to review under § 2255. *See Weinberger v. United States*, 268 F.3d 346, 351-52 (6th Cir. 2001) (while claims based on monetary penalties do not satisfy the in-custody requirement of § 2255, a claim of ineffective assistance of counsel related to such penalty may be cognizable and a defendant may raise a challenge to a restitution order based on ineffective assistance of counsel).

To the extent that he argues that counsel was ineffective in defending him against the forfeiture allegations because "they forgot," no relief is warranted because there is no merit to his

argument that his counsel might have objected to the charge of forfeiture under 17 U.S.C. § 981 instead of § 982.  28 U.S.C. § 2461(c) provides that "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment[.]"  The forfeiture allegation in this matter was based upon Defendant's multiple charges of mail fraud. As the Magistrate Judge observed, these offenses specifically support forfeiture under both the criminal and civil forfeiture statutes. *See* 18 U.S.C. §§ 981(a)(1)(C), (D)(v) and 982(a)(2).  Had Defendant's counsel brought such a motion, it would have failed, and there is no reasonable probability that the outcome of the trial would have been different had the motion been filed.  Accordingly, Defendant's claim for relief on this ground fails, as well.

**V.**

Next, he argues that he is due a "Proof of Claim as to all judges who have been involved in this case, as to what appointment and consent was authorized under 28 U.S.C. § 451, et seq., and what jurisdiction does the district court and Sixth Circuit judge have over Admiralty, Bankruptcy, or Maritime cases." [DE 948.] There was no error with respect to jurisdiction in this matter as the district court and, in turn, the Sixth Circuit, clearly had

16

jurisdiction over the charges of 18 U.S.S. § § 1349, 1341, and 1343, nor is there any proof that the judges in this case were improperly appointed or somehow unqualified to hear this case. Nor is there any reason to address this Court's jurisdiction over claims under admiralty, bankruptcy, or maritime law as those laws were not brought into play in this action. There can be no relief based on these arguments.

## VI.

As to his claim that he was subjected and charged pursuant to an improper indictment, there is no merit. None of Defendant's claims and allegations in this regard were raised in his direct appeal. A federal prisoner's failure to raise a claim on direct appeal, excepting a claim of ineffective assistance of counsel, results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). A procedurally defaulted claim may nonetheless be reviewed if the prisoner can show cause to excuse his failure to raise the claim on direct appeal, and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698–700. If the prisoner fails to establish cause, it is unnecessary to determine if he was prejudiced. *Bousley*, 523 U.S. at 623.

Defendant argues that there was not a "true bill" presented to the grand jury and that there is no signed indictment in this matter. The Court is not persuaded that there was actual prejudice resulting from any failure of his counsel to object to the form of the indictment, as Defendant insists, because there is no support for his contention in the record of this matter. As an initial matter, it was not inappropriate to include a redacted indictment in the record so as to redact "some home addresses of victims within the overt acts and the mail fraud allegations" of the indictment consistent with Fed. R. Crim. P. 49.1, which provides that the home addresses of parties and nonparties should include only the city and state of the home address. [DE 13.] Further, since 2011, it has been the policy of the Court in keeping with the Judicial Conference Policy on Privacy and Public Access to Electronic Case Files, for the "signature of the Grand Jury Foreman . . . [to] be redacted from the Indictment prior to uploading the Indictment into CM/ECF . . . [and t]he unredacted original . . . [to] be maintained under seal in paper in chronological order." [Deputy Letter 11-04, United States District Court, E.D.Ky.] "Counsel of record for a defendant named in the indictment, upon request, may obtain an unredacted copy of the indictment; otherwise, leave of court is required to obtain a copy of the unredacted indictment maintained under seal." [*Id*.] Defendant has

stated no cognizable challenge to this provision of the criminal rules nor made any cogent argument to how the Court Clerk's compliance with the provisions of Deputy Letter 11-04 denied him a trial which comported with the requirements of the constitution. The unredacted copy of the Indictment resides with the Clerk's Office in Frankfort, Kentucky.

He insists repeatedly that somehow, by these means, the Court allowed the prosecutor and the case agents to commit "fraud on the court" because of the redaction of the document contained in the public record and because he has been unable to access the unredacted version of it through some series of misadventures on the part of family members who have sought to see it, but this is not grounds for relief. In the absence of prejudice, the Court will not excuse his procedural default of this argument on direct appeal.

Similarly, the Court declines to afford him relief on his argument that the government made a false declaration before the Grand Jury and that, as a result, this Court lacked jurisdiction over this matter because he was charged criminally with a violation of civil law and because there was no proof of admiralty, maritime, or bankruptcy jurisdiction.[4] Smith argues that, somehow, such this

---

[4] In his Reply in support of his Motion, Defendant argues that Postal Inspector Roberta Bottoms falsely presented to the grand jury that "only a small amount of royalties was paid to investors instead of the trier of fact $1,000,000.00

prosecution deprived him of "due process and confrontation clause of the Sixth Amendment."  These claims were not raised on appeal and are, thus, procedurally defaulted. Nor would they merit relief upon consideration of an ineffective assistance of counsel claim because any motion or appeal that his counsel might have brought would have lacked merit. First and foremost, Defendant was charged with and convicted of violations of federal criminal law.  Even if the matter might have been pursued as a civil action, the Court is not aware of any reason why that would preclude criminal prosecution for the same matters in this instance. Nor can the Court imagine why admiralty, maritime, or bankruptcy jurisdiction would be necessary in this matter as this was a criminal matter.

Further, the law is clear that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. "Federal courts have exclusive jurisdiction over offenses against the laws of the United States ...the permission of the states is not a prerequisite to exercise

_____

plus." The Court is not persuaded that relief is available to him in this instance in the absence of some evidence from which the Court might determine that such a statement was made or was demonstrably false. It follows that his reliance on *Sanders v. Sullivan*, 863 F.2d 218 (2d Cir. 1988), is misplaced. *Sanders* involved a scenario in which a witness, in sworn affidavits, recanted testimony given at trial and, as a result, the Court had a firm conviction that but for perjured testimony the defendant would not have been convicted.  Here, there is no allegation of perjured testimony—or at least no suggestion that Smith could prove that a witness had perjured herself—although it is clear that he disagrees with the theory of the case.

of that jurisdiction." *United States v. Blevins*, 999 F.2d 540 (table) (6th Cir. 1993) (quoting *United States v. Sitton*, 968 F.2d 947, 953 (9th Cir. 1992)). Defendant's reliance on *Adams v. United States*, 319 U.S. 312 (1943), is inapposite as neither 40 U.S.C. §§ 3111 or 3112 (formerly cited as 40 U.S.C. § 255) apply in this matter as there is no action alleged within a federal enclave, among other reasons. Accordingly, any argument Defendant attempts to assert on this point would be meritless if not procedurally defaulted.

Defendant clearly believes he should not have been charged and insists that he is innocent of the charges made and of which he was convicted, but that is not enough. He disputes the charges in the indictment, including names listed in the indictment, challenges the terms used in the business of Target Oil & Gas, and denies the charges alleged, but these are – as the Magistrate Judge concluded – attacks on the factual allegations in the indictment not an attack on the propriety of the indictment itself. Defendant had an opportunity at trial to contest those factual allegations and, on the facts ascertained at trial, the jury convicted him of some of those charges. The Sixth Circuit affirmed those decisions. The Court will not consider these arguments further with respect to the Indictment.

## VII.

Defendant does not have standing to assert a claim for relief under § 2255 on behalf of his co-defendant and son, Shaun Smith, whom he argues was pressured into entering a guilty plea or whose counsel he claims lied to him about the plea process. He has not objected to the Magistrate Judge's analysis of standing or the conclusion that he lacks standing, directly or as a "next friend," although he continues to protest that his co-defendant, Shaun Smith, was wronged in his objections. In the absence of any objection to that analysis, the Court accepts and adopts the Magistrate Judge's analysis as its own and concludes that no relief will be afforded with respect to this argument.

## VIII.

Finally, in his parting shot, Smith alleges that the undersigned was under the influence of pain pills following hip surgery which somehow resulted in the denial of due process to him during the course of the proceedings against him. He writes in his objections to the Recommended Disposition, "This Judge has been lied to, he was on pain pills after getting a hip replacement and was easily manipulated for the cause of justice." [DE 963 at 24, Page ID#: 13412.] As with his other claims, any argument based on this assertion was procedurally defaulted when it was not raised before the appellate court. Nor can default be excused because

there no effort to raise it would have been meritorious or yielded a different result in the trial period.

He has offered no proof of this contention other than the conclusory allegations contained in his pleadings. Further, while the undersigned concedes that he had a hip replacement surgery during the pendency of this case, in November 2009, there can be no evidence that the use of pain medication clouded the judgment of the Court because the undersigned used no medication for pain arising from that surgery beyond over-the-counter Aleve after discharge from the hospital and certainly not while evaluating matters in the conduct of proceedings in this case. Further, the docket reveals that there were no matters decided by this Court during the period surrounding the surgery. In any event, the surgery took place approximately seven months prior to the trial in this matter. There is no merit to Defendant Smith's claim in this regard, and his motion will be denied in this regard, as well.

**IX.**

The Court accepts and adopts the Magistrate Judge's recommended disposition of Smith's other motions: a motion for summary judgment on his § 2255 motion [DE 945] and a motion requesting a "writ of mandamus for immediate release and demands" [DE 960] which appears to be a continuation of his request for relief under § 2255. In his Objections, Defendant does not

directly address the recommended disposition of these for the most part, and the Court may accept the report and recommendation without reviewing the matters contained therein de novo. Out of an abundance of caution and because these motions duplicate the relief requested in his Motion under § 2255, they may also be addressed in some part by his Objections to the Recommended Disposition. As such, the Court recognizes that those aspects of the motions are denied, in the alternative, for the reasons set forth in the Recommended Disposition of his § 2255 motion and as set forth above.

## X.

Finally, the Court considers whether a certificate of appealability should issue in this matter with respect to those claims raised under 28 U.S.C. § 2255. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order for a certificate to issue, Defendant must be able to show that reasonable jurists could find in his favor, and the "question is the debatability of the underlying federal constitutional claim, not the resolution of that debate." *Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003). Having carefully considered the matter, this Court concludes that a certificate should not issue in this matter.

none**XI.**

As Joseph Heller wrote in *Catch-22*, "Just because you're paranoid doesn't mean that they aren't after you." No doubt the United States was out to prosecute Michael Smith – or "get him" as he believes. Investigating the matter, seeking an indictment, obtaining an indictment, then undertaking several weeks of trial on the charges in that indictment says as much. Of course, as the jury concluded, the United States had the evidence to back up the charges lodged against him by the grand jury and that evidence supported a conclusion that he had engaged in criminal behavior. His pleadings are rambling at best and present an unsupported and disjointed conspiracy theory by which he seeks to explain the disconnect between why he stands convicted but believes in his innocence. The evidence he does not discuss in his Motion, Reply, and Objections to the Recommended Disposition is convenient at best and disingenuous at worst.

For all of the reasons stated above, none of this is enough to warrant the relief Smith seeks in his Motion under 28 U.S.C. § 2255.

Accordingly, **IT IS ORDERED:**

(1) that the Magistrate Judge's Recommended Disposition [DE 962] is **ACCEPTED** and **ADOPTED** over Defendant's objections for the reasons stated therein and as set forth above;

(2) that Defendant's Motion to Vacate, Set Aside, or Correct His Sentence pursuant to 28 U.S.C. § 2255 [DE 920] is **DENIED**;

(3) that Defendant's motion for summary judgment on his § 2255 motion [DE 945] and motion requesting a "writ of mandamus for immediate release and demands" [DE 960] are **DENIED**;

(4) that no certificate of appealability will issue.

This is the 26th day of June, 2017.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge